# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37987

<table>
<tr><td>

LAKELAND TRUE VALUE HARDWARE,
LLC,

    Plaintiff-Appellant,

v.

THE HARTFORD FIRE INSURANCE
COMPANY, a Connecticut corporation,

    Defendant-Appellant.

</td><td>

Coeur d'Alene, April 2012 Term

2012 Opinion No. 131

Filed: November 14, 2012

Stephen Kenyon, Clerk

</td></tr>
</table>

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

The judgment of the district court and the district court's award of discretionary costs are <u>affirmed</u>.

Bistline Law, PLLC, Coeur d'Alene, for appellants. Arthur M. Bistline argued.

Duke Scanlan & Hall, PLLC, Boise, for respondent. Keely E. Duke argued.

---

HORTON, Justice.

After the roof collapsed on Lakeland True Value Hardware, LLC's (Lakeland) store, Lakeland sought payment for business personal property and business income losses from its insurer, The Hartford Fire Insurance Co. (Hartford). Lakeland filed suit, asserting bad faith and breach of contract. The district court granted summary judgment dismissing the bad faith claim for lack of evidence that Lakeland's claim was not fairly debatable. The breach of contract claim proceeded to trial, and the jury returned a verdict in favor of Hartford. On appeal, Lakeland challenges the order granting summary judgment. Lakeland also asserts: (1) the jury was confused as to the period of coverage and the district court's evidentiary rulings and jury instructions relevant to that issue were erroneous; (2) the jury verdict is not supported by substantial and competent evidence; and (3) that the district court erred by awarding discretionary costs to Hartford. We affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

The Lakeland True Value Hardware store located in Rathdrum, Idaho, is owned by Lakeland, which is in turn owned by Mike and Kathy Fritz. Hartford insured Lakeland against business personal property and business income losses. On January 28, 2008, heavy snowfall caused the store's roof to collapse. Shortly after Lakeland notified Hartford of the collapse, Hartford hired independent insurance adjuster Steve Bonanno to assess the claim. Bonanno met with Mike Fritz on February 4, 2008, and determined that approximately two-thirds of Lakeland's inventory and some of Lakeland's fixtures had been damaged or destroyed.

That day, Fritz and Bonanno also met with a salvage company estimator. There is conflicting evidence as to the salvage plan the three of them reached. According to Bonanno, the salvage company was instructed to create three separate lists as it removed materials from the store: (1) undamaged materials removed and stored; (2) partially damaged but salvageable materials removed and separately stored; and (3) materials disposed of because they were destroyed. According to the salvage company representative, the salvage company was simply instructed to remove undamaged property from the areas unaffected by the roof collapse and store those materials, while discarding all materials buried by the collapse. Hartford contends that it was Lakeland's obligation to separate the undamaged and salvageable goods in order to enable a valuation of the business personal property claim. Lakeland responds that it was not informed that this was Hartford's position and that it would have objected that it was unable to pay for such a process.

On the same day, Hartford advanced $50,000 toward Lakeland's business personal property claim. Ultimately, the materials buried beneath the collapsed roof were discarded, and salvaged goods were placed into several storage trailers without any distinction made between those that were undamaged and those that were damaged but had limited retail value. These goods remained in storage for several months.

Meanwhile, Hartford hired MD&D, a forensic accounting firm, to evaluate Lakeland's business income claim. On several occasions, MD&D asked Lakeland to provide documentation regarding Lakeland's business income loss, often reiterating previous requests that had gone unfulfilled. Hartford also repeatedly instructed Lakeland to provide that documentation. Lakeland contends on appeal that it provided sufficient documentation to support its business income claim.

On March 18, 2008, Hartford advanced Lakeland $50,000 toward its business income claim. According to Hartford's claim notes, MD&D noted the business income loss schedule it had created in support of the advance payment was incomplete because MD&D lacked several items of requested documentation and MD&D was uncertain "about 1-the expense for the insds rental space during repairs 2-whether insd is paying his entire payroll." Hartford made additional business income payments on May 23, 2008 ($73,951) and July 17, 2008 ($30,144).

Ultimately, Hartford claims adjuster Melanie Copley determined that under the insurance policy, the Period of Restoration (the period during which Lakeland was entitled to payment for lost business income loss) ended on October 31, 2008. She reached this conclusion by taking into account the fact that Lakeland regained access to its retail space on September 1, 2008, then adding sufficient time for Lakeland to stock that space. Although she had been told that four to six weeks was sufficient to stock the store, Copley allowed eight weeks for Lakeland to restock. She thus determined that the Period of Restoration ended on October 31, 2008. Lakeland's financial ability to reopen did not play into Copley's assessment of the Period of Restoration.

On September 4, 2008, Lakeland filed suit against Hartford, asserting bad faith and breach of contract claims. Hartford continued to request documentation after the suit was filed, and also made several payments to Lakeland. Hartford ultimately paid the policy limits of $370,000 for Lakeland's business personal property loss and $266,407 for Lakeland's business income loss.

On November 14, 2009, the district court ruled from the bench and granted summary judgment dismissing Lakeland's bad faith claim on the grounds that Lakeland had failed to provide evidence that its claim was not fairly debatable. Lakeland then filed a memorandum and affidavit of counsel in support of a motion to reconsider. The district court denied the motion, explaining:

> The dispute in the value of Plaintiff's claim, that whole dispute was caused by the Plaintiff's inconsistent amounts that they claimed was due. There were different figures at different times. And it was caused – that dispute in the value of the Plaintiff's claim was also caused by the Plaintiffs not providing all the information the Defendant felt it needed, specifically, the inventory. And that is what led to the delay.

On February 14, 2010, Lakeland filed a second motion for reconsideration, supported by the affidavit of a certified public accountant, Dan Harper. The district court received argument on the motion on February 22, 2010, and again ruled from the bench, denying the motion for

3

reconsideration for lack of proof that the claim was not fairly debatable. On March 9, 2010, Lakeland filed another motion for reconsideration of the grant of summary judgment dismissing its bad faith claims, which was denied on March 13, 2010, evidently due to the district court's scheduling order. On April 6, 2010, Lakeland filed its final motion for reconsideration of the grant of summary judgment as to its bad faith claims and a supporting memorandum. After a hearing, the district court took the motion under advisement and on May 17, 2010, the district court issued a memorandum opinion and order denying the motion.

The district court's opinion focused on the first two elements of a bad faith claim as articulated in this Court's decision in *Robinson v. State Farm Mut. Auto. Ins. Co.*, 137 Idaho 173, 45 P.3d 829 (2002):

> In an insurance claim, the ball starts rolling with the insured making a claim upon the insurer, putting the insurer on notice of the claim. Then the insurer must evaluate that claim and act in good faith. But to prove bad faith, the insured must prove that: 1) the insurer denied a claim in which coverage was not fairly debatable, and 2) that the insured had proven coverage to the point that based on the evidence the insurer had before it, the insurer intentionally and unreasonably withheld the insured's benefits. *Robinson v. State Farm Mut. Auto. Ins. Co.*, 137 Idaho 173, 178, 45 P.3d 829, 834 (2002). … At summary judgment on Lakeland's bad faith claim, *fault* upon Lakeland is wholly *irrelevant*. However, proving the claim was *not* fairly debatable and proving coverage to the point that based on the evidence before the insurer, the insurer then intentionally and unreasonably withheld benefits is not only *relevant*, it is *dispositive*, and, most importantly, it is *Lakeland's burden* to prove at summary judgment. Because Lakeland made unsupported, inconsistent and changing claim demands upon Hartford, at summary judgment Lakeland could not prove its own claim was not fairly debatable, and Lakeland could not prove coverage to the point[,] based on the evidence Lakeland had given to Hartford[,] that Hartford then intentionally and unreasonably withheld benefits.

(Emphasis original).

After the jury began its deliberations, in response to a question from the jury, the parties agreed that the district court should submit a substitute special verdict form. The jury returned a verdict in Hartford's favor, finding that Hartford had complied with the Period of Restoration term of the insurance policy. Over Lakeland's objection, the district court subsequently awarded Hartford some of its requested discretionary costs.

Lakeland appeals and challenges the district court's grant of summary judgment, as well as the sufficiency of the evidence supporting the jury verdict. Lakeland also challenges several

evidentiary rulings made by the district court, the propriety of certain jury instructions, and the district court's order awarding discretionary costs. Lakeland requests attorney fees on appeal.

## II. ANALYSIS

**A. The district court's grant of summary judgment dismissing Lakeland's bad faith claim is affirmed.**

Lakeland asserts that the district court improperly acted as factfinder at the summary judgment phase. Specifically, Lakeland contends that the court impermissibly found that Lakeland's conduct caused the very delays in payment which formed the basis of Lakeland's bad faith claim. Although the district court did make the statement to which Lakeland objects when it ruled from the bench, the judge explained "the primary reason for my decision as to dismissing all bad faith claims is the lack of proof that this claim is not fairly debatable." Thus, the issue before the Court is whether Lakeland provided the district court with sufficient evidence to demonstrate the existence of a genuine issue of material fact as to whether its claim was not fairly debatable.

When this Court reviews an order granting summary judgment, we apply the same standard used by the trial court. *Partout v. Harper*, 145 Idaho 683, 685, 183 P.3d 771, 773 (2008). All disputed facts and reasonable inferences are construed in favor of the nonmoving party. *Id.* A plaintiff may only avoid summary judgment if it provides proof of each element of its claim. *Zollinger v. Carrol*, 137 Idaho 397, 399, 49 P.3d 402, 404 (2002). A party that merely pleads an allegation or provides a scintilla of evidence does not introduce a genuine issue of material fact. *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 871, 452 P.2d 362, 368 (1969) (citing 3 Barron & Holtzoff, *Federal Practice and Procedure* § 1234 (Rules ed. 1958)). Rather, "there must be evidence on which a jury might rely." *Id.* Where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," this Court will affirm the trial court's grant of summary judgment. I.R.C.P. 56(c).

A claim for bad faith exists where "(1) the insurer intentionally and unreasonably denied or withheld payment, (2) the claim was not fairly debatable, (3) the denial or failure to pay was not the result of a good faith mistake, and (4) the resulting harm is not fully compensable by contract damages." *Anderson v. Farmers Ins. Co. of Idaho*, 130 Idaho 755, 759, 947 P.2d 1003, 1007 (1997) (citing *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 98-100, 730 P.2d 1014, 1018-

5

20 (1986)). As the second element indicates, an insurer does not act in bad faith if it declines to pay sums that are reasonably in dispute. *Lucas v. State Farm Fire & Cas. Co.*, 131 Idaho 674, 677, 963 P.2d 357, 360 (1998). Rather, a claim for bad faith arises only where an insurer intentionally denies or delays payment, even though the insured's claim is not fairly debatable. *Robinson*, 137 Idaho at 176-77, 45 P.3d at 832-33 (citing *Anderson*, 130 Idaho at 759, 947 P.2d at 1007). Whether a genuine issue of material fact exists as to whether a claim was fairly debatable is a question of law subject to de novo review. *Lucas*, 131 Idaho at 677, 963 P.2d at 360 (citing *State v. Larios*, 125 Idaho 727, 728, 874 P.2d 538, 539 (1994)).

We affirm the district court's grant of summary judgment. However, we do not do so based on the narrow ground that Lakeland made "inconsistent and changing claim demands upon Hartford." We decline to follow this line of reasoning because, even though an insured may make differing requests for compensation, the claim may be not fairly debatable if the insurer possesses sufficient information to make a reasonably certain valuation of the claim.

Thus, we have closely examined the evidence identified by Lakeland in support of its contention that its claim was not fairly debatable.[1] This has been difficult, because Lakeland's citations to the record have been largely unhelpful. Lakeland repeatedly cites trial testimony and exhibits which, of course, were not before the district court at the time of its decision on Hartford's motion for summary judgment and the subsequent motions for reconsideration. Lakeland's citation to Hartford's memorandum in support of its motion for summary judgment is similarly unhelpful, as Hartford's observation that "[i]t is remarkable to note that the report of Lakeland's own expert, when appropriately adjusted to reflect the value of surviving inventory and the actual historical gross profit margin, establishes a claim value of <u>less</u> than what Hartford has already paid" has no bearing upon whether Lakeland's claim was fairly debatable.

A review of the record reveals that Hartford repeatedly requested information from Lakeland relating to both Lakeland's business personal property claim and its claim for lost business income, which information was not provided prior to the lawsuit. The record further reveals that the delay in payment of Lakeland's claims was directly related to the absence of the requested information. The district court's observation as to the constantly changing claims

---

[1] Although the district court expressly based its decision upon a lack of evidence in support of this element of the bad faith prima facie case, the bulk of Lakeland's argument on appeal is that summary judgment was inappropriate because a disputed issue of material fact existed as to whether Hartford intentionally and unreasonably delayed payment.

advanced by Lakeland reflects the reasonableness of Hartford's requests for information. Indeed, the varying demands demonstrate the necessity for Lakeland to fulfill its obligation to provide necessary information so that Hartford could evaluate whether the claims were properly payable.

As the district court correctly noted, the record is devoid of evidence that Lakeland's claim was not fairly debatable, i.e., that Hartford actually possessed the necessary information to determine that Lakeland's business income and personal property claims were properly payable and thereafter failed to timely pay those claims. Therefore, we affirm the district court's grant of summary judgment.

**B. We affirm the district court's evidentiary rulings, jury instructions, and special verdict.**

On appeal, Lakeland challenges a number of the district court's rulings at trial. First, Lakeland appeals the district court's decision to exclude Lakeland's proposed bad faith expert witness, Robert Underdown. Second, Lakeland contends that the district court erred by not excluding parol evidence that confused the jury by conflating policy terms. Third, Lakeland appeals several of the jury instructions submitted to the jury, as well as the special verdict form. We address these issues in turn.

1. <u>The district court properly excluded Lakeland's proposed bad faith expert witness.</u>

Lakeland acknowledges that the testimony and opinions of expert witness Underdown are only relevant to the issue of bad faith. Since we affirm the district court's order dismissing Lakeland's bad faith claim on summary judgment, we likewise affirm the court's order excluding Underwood.

2. <u>Even if admission of Copley's testimony had the potential to confuse the jury, the admission did not affect Lakeland's substantial rights because it was cured by the jury instructions.</u>

Lakeland contends that the district court erred by admitting parol evidence that varied the terms of the insurance contract's definition of the Period of Restoration. Because we hold that the admitted evidence did not prejudice Lakeland's substantial rights, we do not reach the question of whether the district court's admission of the evidence was an abuse of discretion. This decision is based upon I.R.C.P. 61, which provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial

justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

We initially note that the testimony to which Lakeland objects references express language within the insurance contract and therefore is not parol evidence, otherwise known as "extrinsic evidence of prior contemporaneous negotiations or conversations . . . ." *Lindberg v. Roseth*, 137 Idaho 222, 228, 46 P.3d 518, 524 (2002). We nonetheless look to the substance of the objection and consider whether the testimony confused the jury by erroneously merging the language of two distinct provisions of the insurance policy.

> When the language of a contract is clear and unambiguous, its interpretation and legal effect are questions of law. An unambiguous contract will be given its plain meaning. The purpose of interpreting a contract is to determine the intent of the contracting parties at the time the contract was entered. In determining the intent of the parties, this Court must view the contract as a whole. . . . Whether a contract is ambiguous is a question of law. A contract is ambiguous if it is reasonably subject to conflicting interpretations.

*Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005) (citing *Lamprecht v. Jordan, LLC,* 139 Idaho 182, 185–86, 75 P.3d 743, 746–47 (2003)).

The insurance policy in the present case is unambiguous. Pursuant to the policy, Hartford is obligated to pay for Lakeland's "actual loss of Business Income . . . sustain[ed] due to the necessary suspension of your 'operations' during the 'period of restoration.'" Within the section titled "Property Definitions" is the definition of Period of Restoration:

> "Period of Restoration" means the period of time that:
>     a. Begins with the date of direct physical loss or physical damage caused by or
>        resulting from a Covered Cause of Loss, at the "scheduled premises", and
>     b. Ends on the date when:
>        (1) The property at the "scheduled premises" should be repaired, rebuilt or
>            replaced with reasonable speed and similar quality;
>        (2) The date when your business is resumed at a new, permanent location.
> . . .

The language that Lakeland contends was improperly admitted appears in a separate section that expressly provides a number of the insured's rights and obligations, entitled "Property Loss Conditions." This includes the insured's obligation to mitigate, described as:

> In the event of physical loss or physical damage at the "scheduled premises" you
> must resume all or part of your "operations" as quickly as possible.
> We will reduce the amount of your:
> a.  Business Income loss, other than Extra Expense, to the extent you can resume
>     your "operations", in whole or in part, by using damaged or undamaged

8

property (including merchandise or stock) at the "scheduled premises" or elsewhere.

b. Extra Expenses loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

Read together, these sections provide that the insured is entitled to recover actual business income losses from the date it suffers a covered loss until either the insured's business property "should be repaired, rebuilt or replaced with reasonable speed and similar quality," or its business is permanently resumed in a new location. In addition, the insured owes a duty to mitigate its damages and thus must resume at least part of its operations, even with damaged property, as quickly as possible. Thus, while the contract entitles the insured to recover business income losses up until the expiration of the Period of Restoration, the insurer may reduce its payment to the extent which the insured could have used damaged and undamaged property to resume at least part of its operations.

Lakeland contends that the district court erred by admitting the testimony of claims examiner Melanie Copley because her testimony conflated these two distinct but related periods and thereby confused the jury as to the means by which to calculate the Period of Restoration. At one point in her testimony, Copley did affirm that she was the person who decided that "Lakeland should have been able to resume some of its operations by November 1st of 2008." She later explained that in determining the Period of Restoration, "the policy specifically says you look at the time from when the loss occurred or when the collapse occurred until they could resume part of the operations."

Nonetheless, we hold that even if admission of Copley's testimony may have confused the jury, the district court's denial of Lakeland's objection is harmless error. "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." I.R.C.P. 61. Here, Jury Instruction No. 11a instructed the jury that Hartford bore the burden of proving that Lakeland breached its duty to timely resume operations, and quoted the policy's precise language regarding that duty. Jury Instruction No. 12 instructed that Lakeland bore the burden of proving that Hartford breached its obligation to pay business income losses during the Period of Restoration. Again, the instruction quoted the relevant policy language.

We hold that the jury instructions, with their separate presentation of these distinct concepts and quotation of the policy's precise language with regard to each, cured any prejudice

that may have been caused by Copley's testimony. Since the admitted evidence did not affect Lakeland's substantial rights, we affirm the district court.

    3.   <u>The district court properly instructed the jury.</u>

Lakeland asserts that the district court erred in several of its instructions to the jury.

> When reviewing jury instructions on appeal, the Court is guided by several well-established general rules of construction. On appeal, the review of jury instructions is generally limited to a determination of whether the instructions, when considered as a whole and not individually, fairly and adequately present the issues and state the applicable law. If the instructions fairly and adequately present the issues and state the law, no reversible error is committed. An erroneous instruction does not constitute reversible error where the instruction taken as whole neither misleads nor prejudices a party. Only instructions which are pertinent to the pleadings and the evidence should be given, but where it appears that the giving of the instruction did not result in any substantial injury, though not founded on the issues, the case will not be reversed. Additionally, the giving of an erroneous jury instruction does not generally justify granting a new trial unless the appellant can establish that he or she was prejudiced thereby, and that the error affected the jury's conclusion.

*Robinson v. State Farm Mut. Auto. Ins. Co.*, 137 Idaho 173, 176, 45 P.3d 829, 832 (2002) (citations omitted).

>     *a.   The court properly instructed the jury that Lakeland bore the burden of proving the length of the Period of Restoration.*

Lakeland contends that Hartford bore the burden of proving any contractual condition subsequent that reduced the amount of Lakeland's coverage, and therefore the district court erred by instructing the jury that Lakeland bore the burden of proof with regard to the Period of Restoration. However, we hold that the court merely instructed the jury that Lakeland bore the burden of proving its prima facie case, and therefore its instruction was proper.

Lakeland's contention that the parties intended the language of the Period of Restoration provision to create a condition subsequent is groundless.

> A condition subsequent is a condition that, if performed or violated, as the case may be, defeats the contract, or one that, if not met by one party, abrogates the other party's obligation to perform. A condition subsequent presumes a valid contract and refers to a future event, which divests a preexisting contractual liability. Thus, a contract that is conditioned to become void on a specified event is one subject to a condition subsequent.

17A C.J.S. *Contracts* § 451 (2012). In the present case, the occurrence of the circumstances that triggered the expiration of the Period of Restoration did not void Hartford's obligation to pay

10

Lakeland for lost business income. Rather, their occurrence simply triggered the end of Lakeland's entitlement to payment for lost business income.

A plaintiff bears the burden of proving his right to recover by a preponderance of the evidence. *Miller v. Belknap*, 75 Idaho 46, 52, 266 P.2d 662, 665 (1954). Once "the plaintiff has made a prima facie case, the defendant must meet it with countervailing proof or suffer whatever judgment the prima facie proof will support." *Id.* at 51, 266 P.2d at 665. Thus, Lakeland bore the burden of proving that Hartford failed to pay sums which it was entitled to recover. We conclude that the district court properly instructed the jury.

> b. *Lakeland waived its objection to the instruction that summarized the parties' arguments.*

Lakeland contends that the trial court erred by instructing the jury that Hartford's position at trial was that "Lakeland should have been able to resume some of its operations following the 9-month Business Income period." However, as Hartford correctly observes, Lakeland failed to object to this instruction. Since "[n]o party may assign as error the giving of or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the instruction to which that party objects and the grounds of the objection," the issue is waived on appeal. I.R.C.P. 51(b).

> c. *The jury did not reach the issue of mitigation, and therefore Jury Instruction No. 11a did not affect Lakeland's substantial rights.*

Lakeland contends that the district court erred in giving Instruction No. 11a, which in part concerns Hartford's affirmative defense that Lakeland failed to mitigate by failing to resume its operations as required by the insurance contract. Lakeland asserts that the date by which Lakeland could have resumed some of its operations was not at issue and that the record contains no evidence of how to calculate a reduction of the amount of Lakeland's Business Income coverage. Hartford responds that the issue is waived for lack of any objection before the district court.

Lakeland in fact did object to the mitigation instruction. However, submission of Instruction 11a to the jury did not affect Lakeland's substantial rights because the jury found that Hartford correctly determined the end date of the Period of Restoration and therefore the jury did not reach the issue of mitigation. Since the Court "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties," I.R.C.P. 61, and since the

11

jury's findings precluded it from addressing the issue of mitigation, Lakeland was not prejudiced by Instruction No. 11a.

    4. <u>Lakeland's appeal with regard to the content of the special verdict form is waived because Lakeland did not object to its content before the district court.</u>

Lakeland contends that the special verdict form that the district court submitted to the jury was in error because it confused the jury as to the Period of Restoration. A special verdict form is erroneous if it incorrectly instructs the jury as to the law or confuses the jury. *VFP VC v. Dakota Co.*, 141 Idaho 326, 332, 109 P.3d 714, 720 (2005) (citing *Le'Gall v. Lewis Cnty.,* 129 Idaho 182, 185, 923 P.2d 427, 430 (1996)). Since Lakeland agreed to the content of the special verdict form that the jury ultimately considered, Lakeland has waived this issue on appeal.

The district court initially provided the jury a special verdict form that began with the question: "Was Lakeland capable of resuming some of its operations by November 1st, 2008?" The court submitted this instruction to the jury over Lakeland's objection that it erroneously conflated the policy's Period of Restoration language with its language regarding the duty to resume operations. Soon after the jury retired for deliberations, it sent the court the following question: "In reference to question # 1 we want to know the actual language of the policy in regard to 'was Lakeland capable' or 'should have been capable' to resume some of its operations by November 1, 2008?"

In response, Lakeland's attorney stated "This question demonstrates what I've been talking about all along. They're confused by this cross-referencing between resume some of its operations. That is not the period of restoration, and I knew that it would confuse them, and we allowed testimony to say that, and they want to know the actual language of the policy . . . ." He then suggested that the court submit a special verdict form that directly quoted the insurance policy language regarding Period of Restoration and asked the jury to determine whether Hartford had complied with that language. Hartford's attorney ultimately suggested that since Jury Instruction No. 12 already defined the Period of Restoration, the court should submit a second special verdict form to the jury, with the first question simply requiring the jury to determine whether Hartford erred in determining the Period of Restoration. Counsel for Lakeland agreed to this change. The court thus submitted a substitute special verdict form to the jury in which the first question was modified to read: "Did Hartford correctly determine the end date of the period of restoration?"

Since Lakeland did not object to the language of the substitute special verdict form, and in fact expressly agreed thereto, we will not consider this issue on appeal. I.R.C.P. 51(b).

**C. The jury's verdict was supported by substantial and competent evidence.**

Lakeland contends that no evidence supports the jury verdict because Hartford could not calculate the Period of Restoration without considering Lakeland's financial ability to purchase items of similar quality. This Court must affirm the jury verdict if it is supported by substantial and competent evidence. *Inland Group of Cos., Inc. v. Prov. Wash. Ins. Co.*, 133 Idaho 249, 253, 985 P.2d 674, 678 (1999) (citing *Quincy v. Joint Sch. Dist. No. 41,* 102 Idaho 764, 768, 640 P.2d 304, 308 (1982)).

> By substantial, it is not meant that the evidence need be uncontradicted. All that is required is that the evidence be of sufficient quantity and probative value that reasonable minds *could* conclude that the verdict of the jury was proper. It is not necessary that the evidence be of such quantity or quality that reasonable minds must conclude, only that they *could* conclude.

*Id.* at 253-54, 985 P.2d at 678-79 (citing *Quincy*, 102 Idaho at 768, 640 P.2d at 308) (emphasis original).

We affirm the jury verdict as supported by the following evidence. Claim notes in the record indicate that, as early as February 29, 2008, Hartford informed Lakeland that it required additional documentation before it could pay Lakeland's business income loss claim. As of March 14, 2008, MD&D had created a schedule of Lakeland's business income loss that was based on incomplete information and was only intended to calculate losses for four months. Just over one month later, MD&D continued to request that Lakeland provide documentation necessary to accurately calculate the business income loss claim. In response to a May 2, 2008 request for funds from an independent adjuster hired by Lakeland that characterized Lakeland as "desperate for funds," Hartford informed the adjuster that it required additional documentation.

As of June 27, 2008, MD&D had not received "additional financial information from the insured regarding actual payments made during the month of June . . . ." Hartford communicated this to Lakeland's new attorney on July 1, 2008. Lakeland responded with a demand for payment and threat of a bad faith lawsuit. Shortly after Lakeland provided additional documentation, MD&D informed Lakeland that the documentation was inadequate. The next day, MD&D informed Lakeland that it required additional payroll information because it understood that an

13

employee had left Lakeland's employ. On September 3, 2008, MD&D informed Hartford that Lakeland still had not provided the necessary documentation for July.

Lakeland filed suit on September 4, 2008. Hartford's and MD&D's documentation requests continued. As one Hartford agent noted in a September 10, 2008 letter to Lakeland's counsel,

> . . . [Hartford has] requested as well as [MD&D] more times then [sic] I can count that you provide us with JULY documentation and documentation moving forward so that we can complete the schedules and thus issue payment for July and the months following. Payment has been made in a timely manner once we receive the documentation for our accountant to calculate up until July.

> We can NOT issue payments without documentation to support payment. We are not able to pull numbers from the sky to pay our insured. If you feel it is necessary to file suit w/o supplying us with all the documentation we have requested, then proceed with what you need to do. . . .
> I would think you would do well to supply us with the documentation we have requested and per our insured's insurance policy agreement.

In response to this wealth of evidence indicating that Hartford repeatedly requested the information necessary for it to assess Lakeland's business income loss, Lakeland merely points to evidence that MD&D had prepared schedules that could estimate Lakeland's losses. However, the claim notes state that those schedules were temporary and based on incomplete information.

Thus, evidence in the record indicates that Lakeland failed to provide sufficient documentation of its actual losses, resulting in Hartford's inability to value – and consequently pay – Lakeland's claim. While it may be true that Lakeland lacked sufficient funds to restock and reopen as of November 1, 2008, Lakeland points to no evidence in the record that it provided documentation of its losses sufficient for Hartford to meaningfully assess its business income loss. The jury was free to consider Lakeland's failure to fulfill its obligations under the insurance contract when determining the end date of the Period of Restoration. We affirm the jury verdict as supported by substantial and competent evidence.

**D. We affirm the district court's denial of Lakeland's request for consequential damages, as well as its award of Hartford's discretionary costs.**

Lakeland appeals the district court's order excluding evidence of consequential damages. Lakeland also appeals the district court's order awarding Hartford discretionary costs.

1. <u>The issue of consequential damages is moot.</u>

Lakeland contends that the district court erred by excluding evidence of Lakeland's consequential damages. However, since we affirm the jury verdict finding that Hartford did not breach its obligations to Lakeland, Lakeland is not entitled to any damages. The issue of consequential damages is therefore moot. "Mootness applies when a favorable judicial decision would not result in any relief." *Webb v. Webb*, 143 Idaho 521, 524, 148 P.3d 1267, 1270 (2006) (citing *State v. Rogers,* 140 Idaho 223, 227, 91 P.3d 1127, 1131 (2004)).

2. The district court properly exercised its discretion by awarding discretionary costs to Hartford.

Lakeland contends that the district court erred by awarding Hartford discretionary costs, because the costs asserted by Hartford are typical. In response, Hartford first asserts that the issue is waived because Lakeland failed to timely object to Hartford's memorandum of costs. Hartford next contends that the district court properly exercised its discretion in granting Hartford's motion for costs.

*a. Lakeland timely objected.*

Hartford contends that Lakeland failed to timely object to its memorandum of costs as required by I.R.C.P. 54(d)(6). Lakeland responds that because Hartford served the memorandum by mail, Lakeland was entitled to an additional three days to object thereto. The district court held that because Hartford delivered the memorandum to Lakeland via overnight mail and provided the evidence that it was delivered to Lakeland on June 11, 2010, Lakeland's June 28, 2010 objections were untimely.

Idaho Rule of Civil Procedure 54(d)(6) provides:

Any party may object to the claimed costs of another party set forth in a memorandum of costs by filing and serving on adverse parties a motion to disallow part or all of such costs within fourteen (14) days of service of the memorandum of cost. . . . Failure to timely object to the items in the memorandum of costs shall constitute a waiver of all objections to the costs claimed.

Rule 6(a) provides that:

In computing any period of time prescribed or allowed by these rules, . . . the day of the act . . . after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, a Sunday nor a holiday.

Further, under I.R.C.P. 6(e)(1), "[w]henever a party has the right or is required to do some act . . . within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, three (3) days shall be added to the prescribed period." Whether the time extension granted by I.R.C.P. 6(e) applies to notice or papers served by overnight mail is a question of first impression.

We hold that the plain language of the Rule requires that an additional three days' time be granted where mail, overnight or otherwise, is the means by which a document is served. Since Hartford served its memorandum of costs via overnight mail on June 10, 2010, the seventeen day window for Lakeland's objection expired on June 27, 2010. However, since that date was a Sunday, Lakeland was entitled to object up until June 28, 2010. Thus, the district court erred in ruling that Lakeland's objection was untimely.

     *b.* *The district court did not abuse its discretion.*

Despite the district court's determination that Lakeland's objection was untimely, it nevertheless acknowledged its duty to independently evaluate Hartford's request for an award of discretionary costs. We hold that the district court's award of discretionary costs was not an abuse of discretion. The prevailing party in a civil action may seek reimbursement of some costs "upon a showing that said costs were necessary and exceptional costs reasonably incurred, and should in the interest of justice be assessed against the adverse party." I.R.C.P. 54(d)(1)(A).

> The grant or denial of discretionary costs is committed to the sound discretion of the district court, and will only be reviewed by an appellate court for an abuse of that discretion. In considering whether the trial court abused its discretion in ruling on a request for discretionary costs, we make a three-step inquiry: (1) whether the trial court correctly perceived the issue as discretionary; (2) whether the trial court acted within the boundaries of its discretion and consistent with the applicable legal standards; and (3) whether the trial court reached its determination through an exercise of reason.

*Fish v. Smith*, 131 Idaho 492, 493, 960 P.2d 175, 176 (1998) (quotations and citations removed).

In the present case, the district court expressly acknowledged that the award of discretionary costs was committed to its discretion. The court also exercised reason, as is demonstrated by the lengthy explanation it offered in support of its holding that Hartford was entitled to discretionary costs. Thus, the question is whether the district court "acted within the boundaries of its discretion and consistent with the applicable legal standards."

16

In determining whether to grant Hartford's request for discretionary costs, the court engaged in an extensive review of Idaho case law on the matter, explaining ". . . I think it's an issue that really hasn't been addressed squarely by any of these cases . . . ." The court explained, "I do feel that the plaintiff's conduct in this case, especially plaintiff's counsel's conduct in this case has made this case, quote unquote, exceptional," and cited *Hayden Lake Fire Protection District v. Alcorn*, 141 Idaho 307, 109 P.3d 161 (2005), as support for the proposition that "the case itself can be what's exceptional." The court reasoned "I do feel from a factual standpoint that the plaintiff and the plaintiff's attorney have succeeded in making this lawsuit and the trial something that it really wasn't and wasn't supported by the evidence." Further, the court explained, ". . . I think the plaintiff has determined the nature of the case obviously by filing the Complaint, and I do think that the Complaint was filed earlier than it needed to be, and I agree with Mr. Nickels' assertion, and there's argument that it was premature. It was the plaintiff that obviously pled bad faith and did not succeed on that, so in that regard the plaintiff made it more complex than it needed to be."

Based on its review of the case law, the district court concluded that "who drives the case, who drives the complexity, who drives the litigation is to be kept in mind in a court's sorting through all of this and deciding who caused [the case] to become exceptional." In support of this conclusion the district court cited *Puckett v. Verska*, 144 Idaho 161, 169, 158 P.3d 937, 945 (2007), where this Court affirmed an award of discretionary costs to the plaintiff in a medical malpractice case based on the following rationales: (1) "that the costs were in the interests of justice because of the case's length and complexity and that 'the cost of obtaining such experts in order to prevail at trial should not prohibit legitimate claims from being pursued;'" and (2) "consider[ing] the exceptionality of the costs in light of the 'long course of litigation and complexity of th[e] case.'" The district court here also looked to *Beale v. Speck*, 127 Idaho 521, 537 n. 14, 903 P.2d 110, 126 n. 14 (Ct. App. 1995), where the Court of Appeals affirmed an award of discretionary costs to the defendants in a personal injury case where the plaintiffs had rejected an offer of judgment that was greater than the eventual jury verdict. The district court there reasoned "it was essential for the defendants to obtain an independent medical examination, depose plaintiffs' expert witnesses and to present the testimony of medical experts to rebut the plaintiffs' contentions regarding the extent of damages caused them as a result of the

17

accident. That was the primary focus of the case, and the costs incurred in obtaining such rebuttal evidence were reasonable and justified under the circumstances." *Id.*

Focusing on the present case, the district court explained that "[t]he nature of the case became exceptional because it started out as a bad faith case where I think at the inception . . . plaintiff's sloppy accounting and inconsistent demands to the Hartford certainly led to summary judgment being rendered for bad faith for the Hartford on the plaintiff's bad faith claims, so Hartford's left defending a bad faith case, a breach of warranty case for things that it simply didn't do." Further, the court concluded that Lakeland made the case exceptional by refusing to produce the documentation necessary for Hartford to value its claim, and also because its "motions to reconsider were repetitive, frustrating and caused a lot of expense for everybody, and were unsuccessful, weren't necessary . . . ."

This Court has previously held that it "is within the district court's discretion to grant or deny costs and attorney fees based on the 'interests of justice.' The inquiry is not whether this Court would have held differently, nor is it the standard of this Court's review. . . . [W]hether the district court chooses to grant or deny costs to a party on equity grounds is within its discretion." *Great Plains Equip., Inc. v. Nw. Pipeline Corp.*, 136 Idaho 466, 475, 36 P.3d 218, 227 (2001) (citing *Caldwell v. Idaho Youth Ranch, Inc.*, 132 Idaho 120, 128, 968 P.2d 215, 223 (1998)). This Court has expressly recognized that a party's conduct may permit a trial court to award discretionary costs. *Lettunich v. Lettunich*, 145 Idaho 746, 753-54, 185 P.3d 258, 265-66 (2008). Given that the district court concluded in its discretion that Lakeland's conduct made this case exceptional and that the interests of justice therefore required that Lakeland compensate Hartford for costs related thereto, we hold that the district court did not abuse its discretion by awarding Hartford a portion of its requested discretionary costs. We therefore affirm the award.

### E. Lakeland is not entitled to attorney fees on appeal.

Lakeland requests attorney fees pursuant to I.C. § 41-1839(1), which provides:

Any insurer issuing any policy, certificate or contract of insurance . . . , which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state or in any arbitration for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action or arbitration.

18

Since we affirm the district court's grant of summary judgment and the jury's verdict, Lakeland is not entitled to attorney fees on appeal.

## III. CONCLUSION

We affirm the judgment of the district court and the district court's award of discretionary costs. Costs to respondent.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.