# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44567

<table>
<tr><td>RODNEY HERRETT and JOYCE<br>HERRETT, as husband and wife,<br><br>    Plaintiffs-Respondents,<br>v.<br><br>ST. LUKE'S MAGIC VALLEY REGIONAL<br>MEDICAL CENTER, LTD., dba ST.<br>LUKE'S MAGIC VALLEY,<br><br>    Defendant-Appellant,<br>and<br><br>BUSINESS ENTITIES I through X, and<br>JOHN DOE and JANE DOE, husband and<br>wife, I through X,<br><br>    Defendants.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Boise, November 2017 Term<br><br>Filed: September 6, 2018<br><br>Karel A. Lehrman, Clerk</td></tr>
</table>

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

The judgment of the district court is affirmed.

Gjording Fouser, PLLC, Boise, for appellant. Bobbi Dominick argued.

Pedersen and Whitehead, Twin Falls, for respondents. Jarom A. Whitehead argued.

_____

HORTON, Justice.

St. Luke's Magic Valley Regional Medical Center (St. Luke's) appeals a jury verdict awarding Rodney and Joyce Herrett $3,775,864.21 in a medical malpractice action wherein St. Luke's admitted liability. In this appeal, St. Luke's asserts that the district court erred by denying its motion for mistrial, admitting certain expert testimony, and improperly instructing the jury as to recklessness. We affirm.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Joyce Herrett has suffered from various medical conditions throughout her life and she was hospitalized at St. Luke's in December of 2013 for a septic infection. On December 24, 2013, Herrett was about to be discharged. Just as Herrett was about to leave her room, she asked about the removal of a central venous catheter (CVC) that had been placed in her neck to allow the direct introduction of medication and fluids into her blood stream. Marilou Wentz, the nurse caring for Herrett, testified that she sought guidance from her supervisor, Sheila Dutt, because she had not removed a CVC before and that Dutt told her to just pull it out slowly. Dutt denied that Wentz had sought such instruction. Wentz removed the CVC while Herrett was seated upright in a wheelchair.

As Wentz was removing the CVC, Herrett began to complain of difficulty in breathing. Herrett was placed on the hospital bed and Wentz went for help. A rapid response team was called and Herrett was transferred to the intensive care unit. Herrett had suffered a stroke resulting from an air embolism introduced during the removal of the CVC. After being treated for the stroke, Herrett was readmitted to the rehabilitation unit with Dr. Kim Wiggins as her treating physician.

After a course of treatment, Herrett was released to go home but continued to see Dr. Wiggins. After initially doing well, Herrett was readmitted to the hospital in September of 2014 for failure to thrive. Following the stroke, Herrett has had trouble caring for herself and increased anxiety.

The Herretts filed this suit on February 9, 2015. St. Luke's admitted that Wentz, its employee, breached the standard of care when removing the CVC. The case proceeded to trial to determine whether Wentz's conduct was reckless and the amount of damages. The jury trial lasted nine days.

During trial, the Herretts called Dr. Wiggins to testify about her treatment of Ms. Herrett before and after the stroke. Dr. Wiggins testified that the 2014 hospitalization resulted from the stroke. During cross-examination, St. Luke's questioned Dr. Wiggins about other pre-existing conditions that may have necessitated the September 2014 hospitalization. St. Luke's introduced some of Herrett's medical records (exhibits K and L) into evidence during this cross-examination. On redirect, Dr. Wiggins was asked about encephalomalacia, a term appearing in the records admitted at St. Luke's request. St. Luke's objected, arguing that any opinion

2

regarding encephalomalacia was outside the scope of Dr. Wiggins' expert witness disclosure. The district court overruled the objection.

Near the end of their case-in-chief, the Herretts called Debra DeMint-Lee as a witness. Ms. DeMint-Lee is a life-care planner who testified about the cost of Herrett's future in-home medical care. St. Luke's argues that the district court erred by overruling its objection to DeMint-Lee's testimony for lack of foundation for making this kind of opinion.

Dr. Carl Goldstein was the Herretts' only rebuttal witness. Dr. Goldstein was called to rebut the testimony presented by Dr. Stuart Shankland on behalf of St. Luke's. The Herretts' pretrial witness disclosure stated that "Dr. Goldstein will opine that Dr. Shankland's assessment of the effect of proteinuria and chronic kidney disease on Joyce Herrett's life expectancy is excessive, unreasonable and based on outdated information. Dr. Goldstein will reference materials provided by Dr. Shankland to establish this foundational flaw." St. Luke's contends that the trial court erred by permitting Dr. Goldstein to testify when the pretrial disclosure did not identify which of Dr. Shankland's articles Dr. Goldstein was going to criticize or explain how he intended to utilize Dr. Shankland's articles.

St. Luke's objected to the Herrett's proposed instruction defining the term "reckless," arguing that the district court should give the instruction found in Idaho Jury Instruction 2.25. The district court gave the instruction proposed by the Herretts, stating that the instruction properly stated the law.

The jury found the Herretts were entitled to $3,850,004.83 in damages. This figure was subsequently reduced by stipulation to reflect contractual adjustments of medical expenses and an amended judgment was entered for $3,775,864.21. St. Luke's appeals, arguing that the district court erred in allowing Dr. Wiggins' testimony because it was outside the scope of the expert witness disclosure. St. Luke's also argues that Dr. Goldstein's testimony was not properly disclosed as required by rule, the district court's jury instruction improperly defined recklessness, and Ms. DeMint-Lee's testimony was not supported by proper foundation.

## II. STANDARD OF REVIEW

"When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard." *Edmunds v. Kraner*, 142 Idaho 867, 871, 136 P.3d 338, 342 (2006). "The Court reviews a trial court's decision admitting or excluding evidence, including the testimony of expert witnesses, under the abuse of discretion standard." *White v. Mock*, 140 Idaho 882, 888,

104 P.3d 356, 362 (2004). "Whether a witness is sufficiently qualified as an expert to state an opinion is a matter which is largely within the discretion of the trial court." *Egbert v. Idaho State Ins. Fund*, 125 Idaho 678, 680, 873 P.2d 1332, 1334 (1994) (quoting *Sidwell v. William Prym, Inc.*, 112 Idaho 76, 81, 730 P.2d 996, 1001 (1986)).

"The decision whether to declare or deny a mistrial is a matter within the discretion of the trial judge if the court determines that an occurrence at trial has prevented a fair trial." *Van Brunt v. Stoddard*, 136 Idaho 681, 686, 39 P.3d 621, 626 (2001). "After trial is commenced, at any time prior to the rendering of a verdict, the court may declare a mistrial on its own motion or on motion of any party if it determines an occurrence at trial has prevented a fair trial." I.R.C.P. 48.

In order to determine if the district court abused its discretion this Court looks to see:

> Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, ___ Idaho ___, ___, 421 P.3d 187, 194 (2018).

"The propriety of jury instructions is a question over which this Court exercises free review." *Ballard v. Kerr*, 160 Idaho 674, 702, 378 P.3d 464, 492 (2016) (quoting *Mackay v. Four Rivers Packing Co.*, 151 Idaho 388, 391, 257 P.3d 755, 758 (2011)). "Even where an instruction is erroneous, the error is not reversible unless the jury instructions taken as a whole mislead or prejudice a party." *Id.* "If the instructions fairly and adequately present the issues and state the law, no reversible error is committed." *Id.* (quoting *Lakeland True Value Hardware, LLC v. Hartford Fire Ins. Co.*, 153 Idaho 716, 724, 291 P.3d 399, 407 (2012)).

### III. ANALYSIS

St. Luke's argues that the district court erred in two main aspects during the trial. First, St. Luke's argues that the district court abused its discretion in admitting expert testimony from Dr. Wiggins, Dr. Goldstein, and Ms. DeMint-Lee. Next, St. Luke's argues that the district court erred by giving the jury an incorrect definition of the term "reckless." These assignments of error will be discussed in turn.

**A. The district court did not err in the admission of expert testimony.**

St. Luke's argues that Dr. Wiggins' testimony exceeded the Herretts' pre-trial disclosures and thus violated Idaho Rule of Civil Procedure 26 and the district court's pre-trial order regarding expert testimony. Next, St. Luke's argues that Dr. Goldstein's rebuttal testimony

likewise exceeded the scope of the pre-trial disclosure. Finally, St. Luke's contends that the Herretts failed to lay proper foundation for Ms. DeMint-Lee's testimony regarding in-home care expenses.

**1. The district court did not err in denying St. Luke's motion for a mistrial based on the admission of Dr. Wiggins' testimony regarding encephalomalacia.**

St. Luke's contends that the district court applied the wrong standard in admitting Dr. Wiggins' testimony regarding encephalomalacia and that the admission of this testimony should have resulted in a mistrial.

Before trial, in response to the parties' motions in limine, the district court entered an order relating to undisclosed expert testimony. In that order, the district court precluded "the presentation of expert testimony that has not been disclosed." The order noted that "the result is no more than what the Court's scheduling order and case law requires." Thus, the district court's order did not impose any requirement for disclosure beyond that which Idaho law already provides.

Expert witness disclosures are governed by Idaho Rule of Civil Procedure 26. This rule divides expert witnesses into two categories and requires different levels of disclosure for each. I.R.C.P. 26(b)(4)(A). The first category is for retained experts and requires "a complete statement of all opinions to be expressed and the basis and reasons for the opinion." I.R.C.P. 26(b)(4)(A)(i). The second category is non-retained experts. For such witnesses, the rule requires a party to disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." I.R.C.P. 26(b)(4)(A)(ii). The parties agree that Dr. Wiggins was a non-retained expert.

The Civil Rules Advisory Committee has explained the rationale for distinguishing retained experts from non-retained experts, explaining:

> The purpose of making two categories of expert witnesses under this rule is to distinguish expert witnesses specifically retained in anticipation of litigation from those witnesses who offer expert opinions based on their observations with respect to the transaction or occurrences that are part of the subject matter of the trial, but who are not retained for the purposes of litigation; e.g., a treating physician, a police reconstructionist or an in-house engineer or accountant.

I.R.C.P. 26(b)(4)(A) advisory committee note (Jan. 28, 2014)

The Herretts disclosed that Dr. Wiggins was Ms. Herrett's treating physician and was not compensated as an expert. The disclosure stated that Dr. Wiggins was expected to testify about her treatment of Ms. Herrett and issues relating to the stroke resulting from the removal of the CVC. Dr. Wiggins' testimony on direct examination was limited to facts concerning her treatment of Ms. Herrett. On cross-examination, St. Luke's questioned Dr. Wiggins about alternative reasons for the September 2014 hospitalization. In the course of cross-examination, St. Luke's introduced exhibits K and L into evidence. On redirect, the Herretts asked Dr. Wiggins about Ms. Herrett's encephalomalacia.

As discussed above, Idaho Rule of Civil Procedure 26 requires a summary of facts and opinions to which a non-retained expert is expected to testify. I.R.C.P. 26(b)(4)(A)(ii). The rule does not require a disclosure of everything that the expert may testify about; rather, it requires disclosure of that which the expert is **expected** to testify about. Here, it was impossible for the Herretts to know precisely what subjects St. Luke's would choose to cross-examine Dr. Wiggins about. Because it is impossible to predict what opposing counsel will ask during cross-examination, it is impossible to predict what will be asked during redirect examination. In short, questions on redirect may address matters not included in the pretrial disclosure, if those questions are fairly within the scope of issues explored by opposing counsel during cross-examination.

The Wyoming Supreme Court addressed the issue of the scope of permissible redirect examination in *Sanville v. State*, 593 P.2d 1340 (Wyo. 1979). In *Sanville*, a defendant was charged with obtaining money by false pretenses by passing bad checks. *Id.* at 1342. Part of the evidence tying Sanville to the checks was the presence of his fingerprints on a check. *Id.* The fingerprint identification was performed by the FBI, but the fingerprint examiner did not testify at the trial. *Id.* Ordinarily, testimony about these findings would have been excluded as hearsay. *Id.* at 1344. However, during cross-examination of a bank officer, defense counsel asked about the FBI performing a fingerprint analysis of the check but not for the results of that analysis. *Id.* at 1343. By doing so, the defense sought to create a "negative pregnant" in the minds of the jury by suggesting that the FBI analysis implicated someone other than Sanville. *Id.* at 1344.

On redirect examination, the bank officer was permitted to testify that the FBI analysis showed the presence of Sanville's fingerprints on the check. *Id.* at 1343. The trial court found that the defense had "opened the door" by asking about the FBI analysis. *Id.* Affirming, the

Wyoming Supreme Court stated, "[i]t is usually a basic function of redirect examination to allow a witness to explain his testimony elicited on cross-examination." *Id.* at 1344 (citing *State v. Price*, 513 S.W.2d 392 (Mo. 1974)). The Wyoming Court continued: "the opening the door rule is that a party who in some way permits the trial judge to let down the gates to a field of inquiry that is not competent but relevant cannot complain if his adversary is also allowed to avail himself of the opening of its scope." *Id.* (internal quotations and citations omitted).

This Court has taken a similar approach. "[O]ne may not successfully complain of errors one has consented to or acquiesced in." *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985). "In other words, invited errors are not reversible." *Id.* Here, although Dr. Wiggins' testimony exceeded the scope of the pretrial disclosure, the error was invited by St. Luke's. St. Luke's opened the door by questioning Dr. Wiggins about causation on cross-examination. St. Luke's introduced exhibits discussing encephalomalacia in its cross-examination of Dr. Wiggins, leading the Herretts to ask her about the condition during redirect examination.

St. Luke's relies heavily on *Radmer v. Ford Motor Co.*, 120 Idaho 86, 813 P.2d 897 (1991), for the proposition that expert opinions not disclosed prior to trial must be excluded. In *Radmer*, the plaintiff's expert conducted an examination and analysis of a crash scene days before the first day of trial. *Id.* at 88, 813 P.2d at 899. The opinions formed during this analysis were not disclosed until the morning of the first day of trial. *Id.* In holding that the district court abused its discretion by admitting the testimony, we focused on the continuing duty of parties to supplement responses to discovery where an expert's opinion has been altered. *Id.* at 89, 813 P.2d at 900. In this case, Dr. Wiggins' opinion was not changed; rather, the scope of Dr. Wiggins' testimony was expanded by St. Luke's questioning. Because this case presents a different issue than that which we considered in *Radmer*, we do not find that case to be instructive.

St. Luke's further argues that it was denied a fair trial based on Dr. Wiggins' testimony and that the district court abused its discretion by denying its motion for a mistrial. As discussed above, any error that may have resulted from admitting Dr. Wiggins' testimony was invited. Thus, the district court did not abuse its discretion in denying the motion for mistrial.

**2. The district court did not abuse its discretion when it admitted Dr. Goldstein's rebuttal testimony.**

7

The Herretts called one rebuttal witness, Dr. Carl Goldstein. Dr. Goldstein was called to testify regarding the opinions presented by St. Luke's expert, Dr. Stuart Shankland. The Herretts' retained expert disclosure stated that "Dr. Goldstein will opine that Dr. Shankland's assessment of the effect of proteinuria and chronic kidney disease on Joyce Herrett's life expectancy is excessive, unreasonable and based on outdated information. Dr. Goldstein will reference materials provided by Dr. Shankland to establish this foundational flaw." St. Luke's objected to Dr. Goldstein's testimony, arguing that this disclosure was deficient because it did not identify which of Dr. Shankland's publications Dr. Goldstein was going to criticize or how Dr. Goldstein was going to use those articles. We hold that the rule does not require the level of specificity which St. Luke's contends.

For retained experts, Idaho Rule of Civil Procedure 26(b)(4)(A)(i) requires parties to disclose:

> A complete statement of all opinions to be expressed and the basis and reasons for the opinions must be disclosed; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; any qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

I.R.C.P. 26(b)(4)(A)(i)..

Based upon the pretrial disclosures, it was impossible for the Herretts to know precisely what Dr. Shankland's testimony would be. St. Luke's disclosure for Dr. Shankland identified ten articles and chapters from various medical treatises and publications. When he testified, Dr. Shankland devoted considerable time to discussing one article in particular, referencing charts within the article. On rebuttal, Dr. Goldstein addressed this article and opined that the study was not designed to provide the type of support necessary for Dr. Shankland's opinion on life expectancy. After receiving an offer of proof, the district court held that Dr. Goldstein's testimony was properly disclosed.

Discussing the reasoning for Idaho Rule of Civil Procedure 26 disclosures, we have said: "[i]t is fundamental that opportunity be had for full cross-examination, and this cannot be done properly in many cases without resort to pre-trial discovery particularly when expert witnesses are involved." *Easterling v. Kendall*, 159 Idaho 902, 912, 367 P.3d 1214, 1224 (2016) (quoting

*Clark v. Klein*, 137 Idaho 154, 158, 45 P.3d 810, 814 (2002)). At oral argument, St. Luke's argued that Dr. Shankland was deposed prior to trial. The outcome of this appeal may have been different if St. Luke's had shown that Dr. Shankland's testimony during his deposition was similar to that presented on cross-examination. If this was the case, then the Herretts may well have known which article Dr. Shankland's testimony would focus on and a more complete disclosure of Dr. Goldstein's opinion may have been required. However, Dr. Shankland's deposition is not in the record before this Court. "Where an incomplete record is presented to an appellate court, missing portions of the record are presumed to support the action of the trial court." *Idaho Military Historical Soc'y v. Maslen*, 156 Idaho 624, 629, 329 P.3d 1072, 1077 (2014) (quoting *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 744, 979 P.2d 605, 617 (1999)). Therefore, we hold that the district court did not abuse its discretion in allowing Dr. Goldstein's testimony.

### 3. The district court did not abuse its discretion when it held there was sufficient foundation for Ms. DeMint-Lee's testimony.

Near the end of their case-in-chief, the Herretts called Debra DeMint-Lee to testify. Ms. DeMint-Lee is a life-care planner who testified about the cost of Herrett's future in-home medical care. St. Luke's objected to this testimony, arguing that the Herretts had not laid the proper foundation for DeMint-Lee's opinion. The district court overruled the objection and admitted the testimony.

Idaho Rule of Evidence 703[1] discusses the basis of expert testimony:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in order for the opinion or inference to be admitted.

I.R.E. 703. "When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard." *Edmunds v. Kraner*, 142 Idaho 867, 871, 136 P.3d 338, 342 (2006).

Although Ms. DeMint-Lee testified that she had not consulted with Ms. Herrett's treating physician, she reviewed Herrett's medical records and consulted with other healthcare providers who had reviewed the records. St. Luke's did not demonstrate that experts in the life-care planning field do not rely on this type of information in forming their opinions. As such, the

---

[1] The rule was amended, effective July 1, 2018. We consider the rule in effect at the time of the trial of this action.

district court did not abuse its discretion in allowing Ms. DeMint-Lee to testify about Ms. Herrett's future care.

Further, even if Ms. DeMint-Lee's testimony lacked the proper foundation as to causation or necessity of in-home care, any error in admitting the testimony was harmless. The Herretts introduced other testimony regarding the cause of Ms. Herrett's disability and the necessity for future in-home care. Dr. Wiggins testified that Ms. Herrett's condition declined dramatically following the stroke. Additionally, as noted by the district court, Mr. Herrett also testified regarding his wife's deteriorating condition following the stroke. While Mr. Herrett could not testify as to medical causation as a lay witness, he could testify as to the deterioration that he witnessed. The bulk of Ms. DeMint-Lee's testimony dealt with the cost of future in-home care and St. Luke's does not challenge the foundation for Ms. DeMint-Lee's testimony relating to the cost of such, only the foundation for the cause and necessity of that care.

**B. The district court did not err in its instruction defining "reckless."**

St. Luke's objected to the instruction defining recklessness, arguing that the district court should give the instruction found in Idaho Jury Instruction 2.25. The district court gave the instruction proposed by the Herretts, stating that the instruction properly stated the law and that it thought it was better than the pattern instruction. That instruction stated:

> Conduct is reckless when a person makes a conscious choice as to his or her course of action under circumstances where the person knew or should have known that such action created a high probability that harm would actually result. The term "reckless" does not require an intent to cause harm. Reckless means more than ordinary negligence.

St. Luke's argues that this instruction was an incorrect statement of the law and reduced the burden on the Herretts.

"The propriety of jury instructions is a question of law over which this Court exercises free review." *Ballard v. Kerr*, 160 Idaho 674, 702, 378 P.3d 464, 492 (2016) (quoting *Mackay v. Four Rivers Packing Co.*, 151 Idaho 388, 391, 257 P.3d 755, 758 (2011)). "If the instructions fairly and adequately present the issues and state the law, no reversible error is committed." *Id.* (quoting *Lakeland True Value Hardware, LLC v. Hartford Fire Ins. Co.*, 153 Idaho 716, 724, 291 P.3d 399, 407 (2012)). Idaho Rule of Civil Procedure 51(g) provides:

> Whenever the latest edition of Idaho Jury Instruction (IDJI) contains an instruction applicable to a case and the court determines that the jury should be instructed on the subject, the court should use the IDJI instruction unless it finds a

10

different instruction more adequately, accurately or clearly states the law. Whenever the latest edition of IDJI does not contain an instruction on a subject upon which the court determines that the jury should be instructed, or when an IDJI instruction cannot be modified to submit the issue properly, the instruction given on that subject should be simple, brief, impartial and free from argument.

I.R.C.P. 51(g). Here, St. Luke's argues that IDJI 2.25 defines reckless. However, IDJI 2.25 provides a definition of "willful and wanton." IDJI 2.25. It reads:

The words "willful and wanton" when used in these instructions and when applied to the allegations in this case, mean more than ordinary negligence. The words mean intentional or reckless actions, taken under circumstances where the actor knew or should have known that the actions not only created an unreasonable risk of harm to another, but involved a high degree of probability that such harm would actually result.

IDJI 2.25. While we have said that IDJI 2.25 would be acceptable as a jury instruction defining the term reckless, we have never held that this is the **only** definition. *Hennefer v. Blaine Cnty. Sch. Dist.*, 158 Idaho 242, 249, 346 P.3d 259, 266 (2015). As this Court has not yet adopted an instruction defining reckless, the district court did not err so long as its definition was simple, brief, impartial, and free from argument. I.R.C.P. 51(g).

In considering the definition of reckless, this Court has said that it is an objective standard rather than a subjective one. *Hennefer*, 158 Idaho at 249, 346 P.3d at 266. "Though the actor must make a conscious choice as to his or her course of action, the actor need not subjectively be actually aware of the risk or the high probability that harm will result." *Id.* In *Carillo v. Boise Tire Co. Inc.*, 152 Idaho 741, 274 P.3d 1256 (2012), we stated that "reckless misconduct is a form of negligence that involves both intentional conduct and knowledge of a substantial risk of harm." *Carillo*, 152 Idaho at 751, 274 P.3d at 1266.

The district court's instruction properly informed the jury that recklessness is more than ordinary negligence. Additionally, the instruction set forth an objective standard requiring the Herretts to show that Wentz either knew or should have known that harm would actually result. Because this Court has not specifically adopted an instruction defining recklessness and because the instruction used by the district court comports with the requirements of Idaho Rule of Civil Procedure 51(g) and is an accurate statement of the law, the district court did not err in giving this instruction.

## C. Attorney Fees on appeal

The Herretts seek attorney fees under Idaho Code section 12-121, arguing that St. Luke's brought or pursued this appeal frivolously, unreasonably, or without foundation. Under Idaho

Code section 12-121 attorney fees may be awarded to a prevailing party where this Court determines that the appeal was "brought or pursued frivolously, unreasonably, or without foundation. *Ballard*, 160 Idaho at 720, 378 P.3d at 510. Because the questions presented in this appeal are not areas of well-settled law, we find that St. Luke's has not brought this appeal frivolously, unreasonably, or without foundation. As such, an award of attorney fees is not appropriate.

## IV. CONCLUSION

We affirm the judgment of the district court and award costs, but not fees, to the Herretts.

Chief Justice BURDICK, and Justices BRODY and BEVAN **CONCUR.** JONES, J. sat, but did not participate due to his untimely death.